UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

SHEIKH P. MEHEDI,

        Plaintiff,

v.

MEMRY CORPORATION,

        Defendant.

Civil Action No.
3: 17 - CV - 809 (CSH)

JULY 5, 2017

## ORDER ON SUBJECT MATTER JURISDICTION AND MOTION TO INTERVENE BY ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS [DOC. 10]

**HAIGHT, Senior District Judge:**

### I. BACKGROUND

Plaintiff Sheikh P. Mehedi commenced this action to recover damages for physical injuries he allegedly sustained to his left index finger while he was working on a "wire draw machine" during his assignment as a temporary employee for Defendant Memry Corporation ("Memry") on July 7, 2015. At that time, Plaintiff was "an employee of a temporary employment staffing agency known as Premier Staffing Services of New York, Inc.," which was located at 340 Glen Street, Suite 401, White Plains, New York 10603. Doc. 1, ¶ 7. Premier had assigned Plaintiff to the machine operator position at Memry's facility in Bethel, Connecticut. *Id.*, ¶ 8.

In his Complaint, Plaintiff based this Court's subject matter jurisdiction solely upon "diversity of citizenship" under 28 U.S.C. § 1332(a)(1).[1] Doc. 1, ¶ 5. However, because Plaintiff's

---

[1] As the Court noted in its prior Order:

In the case at bar, there appears to be no basis for the Court to exercise "federal

jurisdictional allegations were insufficient for this case to proceed in federal court, the Court ordered the parties to submit affidavits to establish their citizenship for diversity purposes. *See Mehedi v. Memry Corp.*, No. 3:17-CV-809 (CSH), 2017 WL 2485377, at *1 (D. Conn. June 8, 2017). The Court also ordered Plaintiff to declare, and provide facts to support, that his damages meet the requisite jurisdictional amount, exceeding the sum or value of $75,000, "exclusive of interest and costs," 28 U.S.C. § 1332(a)(1). The parties have filed the requisite affidavits so that, as set forth below, the Court may make its determination regarding subject matter jurisdiction.

Furthermore, since the Court's prior Order, Zurich American Insurance Company Of Illinois ("Zurich"), as subrogee of Premier Staffing Services of New York, Inc., has filed a motion to intervene as co-plaintiff in this action. Doc. 10. The Court will examine the motion to intervene and its ramifications herein.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

The Court has reviewed the affidavits of Plaintiff Mehedi and Defendant Memry [Doc. 8 & 11] with respect to citizenship and has determined that the Court has "diversity of citizenship" subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Specifically, the action is between

---

question" jurisdiction – *i.e.*, no claim arising under the Constitution or federal law. *See* 28 U.S.C. § 1331. Plaintiff's only claim is a state law negligence claim, based on "the negligence of Memry and/or Memry's agents or employees." Doc. 1, ¶ 15. Consequently, Plaintiff's sole asserted jurisdictional basis is "diversity of citizenship." *Id.*, ¶ 5.

*Mehedi v. Memry Corp.*, No. 317-CV-809CSH, 2017 WL 2485377, at *2 (D. Conn. June 8, 2017).

"citizens of different states" and the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1).

With respect to citizenship, individual Plaintiff Mehedi has established through his affidavit that on "May 17, 2017, the date this action was commenced," he was domiciled at "8069 88th Avenue, Woodhaven, New York." Doc. 8-1, ¶ 3. An individual's citizenship for diversity purposes is determined by his or her domicile. *See, e.g., Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000); *John Birch Soc. v. Nat'l Broad. Co.*, 377 F.2d 194, 199 (2d Cir. 1967). Plaintiff is thus a citizen of New York.

As to the citizenship of Defendant Memry Corporation, pursuant to 28 U.S.C. § 1332(c)(1), a corporation "shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." Memry has proven by affidavit of its Vice President Controller, John Schosser, that it is a citizen of Delaware and Connecticut. Specifically, Memry was "only incorporated by the state of Delaware" and has its principal place of business "located at 3 Berkshire Boulevard in Bethel[,] Connecticut." Doc. 11, ¶¶ 3-4. Plaintiff Mehedi's citizenship (New York) is therefore diverse from that of Defendant Memry (Delaware and Connecticut).

Finally, with respect to damages, "a party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994). In his affidavit, Plaintiff has provided sufficient facts to establish that the amount in controversy meets the jurisdictional minimum, exceeding "$75,000, exclusive of interest and costs," 28 U.S.C. § 1332(a).

In particular, Plaintiff has testified by affidavit that "[a]s a result of the subject injuries which [he] sustained on July 7, 2015": he was "required to undergo two surgical procedures, as well as extensive physical rehabilitation and therapy;" he has incurred over $18,000 in medical expenses; he has lost approximately $28,000 in wages due to his "inability to work;" upon injury, he sustained "58.5% permanent partial impairment to [his] left index finger" so he has lost the ability to play the guitar and the flute, which were two of his avocations prior to his injury; he now has difficulties typing and/or using a computer keyboard with his left index finger (which may impair his earning capacity because his "educational background is in computer science"); he has been advised by physicians that further surgery "may only marginally improve [his] range of motion" in his left index finger and will not help with the "constant, significant, and at times, debilitating pain" he experiences from his injuries."[2] Doc. 8-1, ¶¶ 5-8. In light of these alleged facts, Plaintiff has amply supported his submission that his "economic and non-economic damages due to the permanent injuries [he] sustained on July 7, 2015, exclusive of interest and costs, are well in excess of the jurisdictional threshold amount of . . . $75,000." *Id.*, ¶ 9.

There is a rebuttable presumption that the Plaintiff's alleged amount in controversy is a "good faith representation" of that amount. *Wolde Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999) (citing *Tongkook*, 14 F.3d at 785-86) ("If the right of recovery

---

[2] Regarding his pain, Plaintiff testified in detail in his affidavit as follows:

> The pain that I have due to my injuries runs from my injured finger through and past my left elbow into my upper left arm. I have also been advised by my physicians that amputation of the left index finger may well be my best option if my goal is to alleviate my pain.

Doc. 8-1, ¶ 8.

is uncertain, the doubt should be resolved . . . in favor of the subjective good faith of the plaintiff."). Accordingly, based on Plaintiff's testimony in his affidavit regarding his injuries, the Court finds that the jurisdictional amount in controversy has been met.

Having carefully reviewed the contents of the parties' affidavits, the Court concludes that it has "diversity of citizenship" jurisdiction. Pending before the Court, however, is Zurich's motion to intervene, which the Court must resolve before determining whether the action may proceed – *i.e.*, whether Zurich must or may intervene as co-plaintiff; and whether, in either event, its entry in the action would destroy "diversity of citizenship" subject matter jurisdiction. The Court now turns to that motion.

**B.  Motion to Intervene**

On June 23, 2017, Zurich American Insurance Company of Illinois, as subrogee of Premier Staffing Services of New York, Inc., filed a motion to intervene in this action as co-plaintiff. Doc. 10. Zurich asserts that it may intervene pursuant to Connecticut General Statutes § 31–293(a), which authorizes an employer to intervene in the employee's action against a third-party tortfeasor within thirty (30) days of receiving notification of such action. *See* Conn. Gen. Stat. § 31-293(a) ("[A]ny employer or the custodian of the Second Injury Fund, having paid, or having become obligated to pay, [workers'] compensation under the provisions of this chapter may bring an action against such person to recover any amount that he has paid or has become obligated to pay as compensation to the injured employee.").

Under Connecticut law, although the insurance carrier of the employer is not specifically covered by § 31-293, that insurer may bring an action against the third-party tortfeasor as the employer's subrogee under the common law. *See Pac. Ins. Co., Ltd. v. Champion Steel, LLC*, 323

Conn. 254, 266 (2016) ("Our conclusion that a workers' compensation insurer may maintain a common-law equitable subrogation action against a third-party tortfeasor who is liable for injuries sustained by an employee is also supported by public policy. . . . [A]llowing insurers to bring such actions serves the public policy of containing the cost of workers' compensation insurance.") (citing *Quire v. Stamford*, 231 Conn. 370, 375 (1994) (§ 31-293[a] implements public policy of containing cost of workers' compensation insurance)).

In the motion, Zurich represents that Mehedi's alleged injuries in this action "arose out of and in the course of his employment [by Premier, while on assignment as a "machine operator" to Memry] and the employment was in the scope of Connecticut's Workers' Compensation Act." Doc. 10-1, ¶ 1. Due to the injuries for which Mehedi seeks recovery in this action, Zurich "has paid and become obligated to pay large sums to and on behalf of Mehedi under the Connecticut Workers' Compensation Act."[3] *Id.*, ¶ 2. Zurich "claims that any damages recovered in said action shall be so paid and apportioned so that it will be reimbursed the amount it has paid and may become obligated to pay under the Connecticut Workers' Compensation Act, and a credit made toward any proceeds which Mehedi may receiver [sic] against any future benefits." *Id.*, ¶ 3. *See also* Doc. 10-1, ¶ 7. Finally, Zurich states that, "pursuant to Conn. Gen. Stat. § 31-293, [it] was duly notified of the bringing of this action, and hereby intervenes within thirty days thereof."[4] Doc. 10, ¶ 4.

---

[3] In its proposed "Intervening Complaint," Zurich alleges that as a result of Mehedi's injuries, "on behalf of and pursuant to an insurance policy carried by Premier," it has "paid compensation to [Mehedi] in the amount of $39,712.41 and may be required in the future to pay further sums." Doc. 10-1, ¶ 5. In addition, Zurich alleges that it "has paid to or on behalf of [Mehedi] the sum of $18,395.99 for medical care" under the terms of the Connecticut Workers' Compensation Act and "may be required to furnish further such expenses in the future." *Id*.

[4] The Electronic Summons for service upon Memry was issued by the Clerk on May 19, 2017; and counsel for Memry appeared in this action on June 5, 2017. Doc. 6 & 7. These dates

1.  **<u>Standard of Review - Rule 24, Fed. R. Civ. P.</u>**

The Court notes at the outset that Zurich has entitled its pleading, "Notice of Intervention/Motion to Intervene," which suggests to the Court that Zurich believes it is entitled to intervene as a matter of right. Zurich also concludes its pleading with the statement, "Intervenor hereby joins this action as a party plaintiff and herewith files its intervening complaint." Doc. 10, ¶ 4.

Federal Rule of Civil Procedure 24 permits a party to intervene in ongoing litigation as a matter of right or with the Court's permission. *See* Fed. R. Civ. P. 24(a) ("Intervention Of Right"), 24(b) ("Permissive Intervention"). The party who seeks to intervene bears the burden of demonstrating that it meets all requirements for intervention. *See, e.g.*, *Simonds v. Wal-Mart Stores, Inc.*, No. 3:13-CV-183 (SRU), 2013 WL 3007191, at *1 (D. Conn. June 17, 2013). *See also Seils v. Rochester City Sch. Dist.*, 199 F.R.D. 506, 509 (W.D.N.Y. 2001) ("The moving party has the burden of demonstrating its entitlement to intervene."). In considering a motion to intervene, the court must accept "as true the non-conclusory allegations of the motion[,]" but remain "mindful that each intervention case is highly fact specific. " *Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 133-34 (S.D.N.Y. 2016) (quoting *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 262 F.R.D. 348, 352 (S.D.N.Y. 2009)).

Under Rule 24(a), Fed. R. Civ. P., upon timely application the court must permit a party to intervene as "of right" if that party:

(1) is given an unconditional right to intervene by a federal statute; or

---

appear consistent with Zurich's assertion that when it filed this motion to intervene on June 23, 2017, it did so within thirty days of notice by Memry.

> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(1)-(2).

"On timely motion," a party seeking "permissive intervention" may intervene at the Court's discretion if that party: (1) "is given a conditional right to intervene by a federal statute;" or (2) "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(A)-(B).

The Second Circuit has specified that "a putative intervenor as of right must meet four criteria: the applicant must (1) file a timely motion; (2) claim an interest relating to the property or transaction that is the subject of the action; (3) be so situated that without intervention the disposition of the action may impair that interest; and (4) show that the interest is not already adequately represented by existing parties." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001) (citing *United States v. Pitney Bowes, Inc.,* 25 F.3d 66, 70 (2d Cir. 1994)). *See also In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 197 (2d Cir. 2000) (stating same factors with similar language). This four-part test "is a flexible and discretionary one, and courts generally look at all four factors as a whole rather than focusing narrowly on any one of the criteria." *S&S Kings Corp. v. Westchester Fire Ins. Co.*, No. 16-CV-2016 (RA), 2017 WL 396741, at *1 (S.D.N.Y. Jan. 27, 2017) (quoting *Tachiona ex rel. Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 394 (S.D.N.Y. 2002)). Nonetheless, "[a] would-be intervenor's failure to meet all of these requirements justifies the denial of its motion." *Butler*, 250 F.3d at 176 (citing *Pitney Bowes*, 25 F.3d at 70). *See also, e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) ("Denial of the motion to intervene is proper if any

of these requirements is not met.").

Under Rule 24, the threshold inquiry is whether the application for intervention is timely. "Whether a motion to intervene is timely is determined within the sound discretion of the trial court from all the circumstances." *Pitney Bowes*, 25 F.3d at 70 (citing *NAACP v. New York*, 413 U.S. 345, 366 (1973)). With respect to timeliness, "circumstances generally considered are: (1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *Id.* (citation omitted).

In the case at bar, the threshold requirement of timeliness is satisfied. Pursuant to Connecticut General Statutes § 31–293(a), the statute upon which Zurich bases its request to intervene, there is a thirty-day period following notice of the action during which an employer (in this case, its equitable subrogee) was required to file; and Zurich asserts that it met that deadline, filing within 30 days after learning of the action. Doc. 10-1, ¶ 4. Moreover, the action remains in its preliminary stages and was stayed to enable the Court to assess its subject matter jurisdiction. There has been no delay due to the motion to intervene. In addition, Zurich may be prejudiced in preserving its interest to recover workers' compensation payments from Defendant Memry if the motion were denied. This is not a situation "where the putative intervenor and a named party have the same ultimate objective." *Butler*, 250 F.3d at 179. Plaintiff Mehedi and insurance carrier subrogee Zurich have overlapping but separate interests and motives in seeking recovery: respectively, compensation for Mehedi's total injuries and reimbursement for Zurich's workers' compensation payments, made on behalf of Premier. Finally, there is no indication that there are unusual circumstances which militate against a finding of timeliness.

As to the remaining three requisite factors for intervention of right: Zurich may have a significant protectable interest in recovering the "large sums" it has become obligated to pay to Plaintiff Mehedi under the Connecticut Workers' Compensation Act; the disposition of the present action may impair Zurich's ability to recover those sums (*i.e.*, protect its interest) if Zurich is not allowed to participate in the action; and the existing parties may not adequately represent Zurich's interest in recovering the aforementioned workers' compensation payments.[5] After all, the key issue to be determined in this case is whether Memry acted negligently, thereby causing Mehedi's injuries. *See* Doc. 10-1, ("Intervening Complaint"), ¶ 7. Any judgment in this action may have preclusive effects upon Zurich's ability to bring a subsequent action for workers' compensation against Memry. In sum, the facts presented are sufficient for the Court to grant the motion to intervene as of right.

Alternatively, the Court would exercise its discretion to grant permissive intervention because Zurich "has a claim . . . that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). As previously discussed, Mehedi and Zurich both claim that the negligence of Memry has resulted in injuries to Mehedi for which both Mehedi and Zurich seek to recover. Mehedi has allegedly suffered serious, debilitating injuries to his left index finger, affecting both his earnings and personal life, and Zurich has become liable to pay Mehedi's workers' compensation payments on behalf of its insured, Premier. Under these circumstances, both Mehedi and Zurich wish to impose liaiblity on Memry for alleged negligence. In the interest of justice, Zurich should be allowed to intervene.

---

[5] Zurich seeks to recover an apportioned share of the damages Mehedi may recover in this action as reimbursement for the amounts it has paid him and amounts it may become obligated to pay him under the Connecticut Workers' Compensation Act. Doc. 10, ¶ 3. Zurich also seeks to obtain a "credit toward any proceeds which Mehedi may receiver [sic] against any future benefits." *Id.* If Zurich is not in the action, it may not receive these amounts to which it claims entitlement.

At this juncture, although the Court finds sufficient grounds to grant Zurich's motion to intervene, the Court cannot do so without the clarification of jurisdictional issues. In particular, Zurich must establish its citizenship at the time the action commenced, in order that the Court may determine whether Zurich's citizenship as a party plaintiff is diverse from defendant Memry's citizenship. If the Court were to grant the motion, allowing Zurich to enter the action as a co-plaintiff, and if that entry were to destroy "diversity of citizenship," the sole existing basis for this Court's subject matter jurisdiction, the Court would be required to dismiss the action without prejudice for lack of subject matter jurisdiction. *See* Parts II.B.2 & III., *infra*.

### 2. <u>Intervenor's Citizenship - Diversity of Citizenship</u>

Pursuant to 28 U.S.C. § 1367(b), in pure diversity cases – where federal subject matter jurisdiction is based exclusively on "diversity of citizenship" – the court may not exercise supplemental jurisdiction over claims "by persons . . . seeking to intervene as plaintiffs under Rule 24," brought against non-diverse parties.[6] *Simonds,* 2013 WL 3007191, at *2 (citing and quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 560 (2011)). Put simply, "Section 1367(b), which applies only to diversity cases, withholds supplemental jurisdiction over the claims

---

[6] Section 1367(b) provides:

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or *seeking to intervene as plaintiffs under Rule 24* of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(b) (emphasis added).

of plaintiffs . . . *who seek to intervene pursuant to Rule 24*." *Exxon Mobil Corp.*, 545 U.S. at 560 (emphasis added). *See also F5 Capital v. Pappas*, 856 F.3d 61 (2d Cir. 2017) ("Section 1367(b) therefore eliminated supplemental jurisdiction over certain claims brought by plaintiffs, where exercising jurisdiction over those claims would result in a lack of complete diversity in the underlying dispute.") (quoting *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 726-27 (2d Cir. 2000) (citing legislative history)); *Underpinning & Found. Skanska, Inc. v. Berkley Reg'l Ins. Co.*, 262 F.R.D. 196, 200 (E.D.N.Y. 2009) ("Section 1367(b) precludes supplemental jurisdiction for claims brought by non-diverse plaintiffs intervening pursuant to Rule 24.").

Under § 1367(b), exclusion of non-diverse intervenors "is [designed] to prevent a two-step evasion of the requirement of complete diversity of citizenship by a person who, being of the same citizenship as the defendant, waits to sue until a diverse party with which it is aligned sues the defendant, and then joins the suit as an intervening plaintiff." *Simonds,* 2013 WL 3007191, at *2 (quoting *Aurora Loan Servs., Inc. v. Craddieth*, 442 F.3d 1018, 1025 (7th Cir. 2006)). Section 1367(b) reflects Congress's intent to prevent plaintiffs "from circumventing the requirements of diversity." *Aurora Loan Servs.,* 442 F.3d at 1025 (citation and internal quotation marks omitted).

In its motion to intervene, Zurich fails to allege sufficient facts to establish its citizenship; and consequently, the Court cannot determine whether its citizenship is diverse from that of Memry. Before the Court may rule on its motion to intervene, Zurich must provide the necessary facts to prove its citizenship by affidavit. If Zurich is a corporation, it must provide its states of incorporation and principal place of business on the date this action commenced, May 17, 2017.[7]

---

[7] As set forth in the Court's previous Order, "diversity must exist at the time the action is commenced." 2017 WL 2485377, at *2 (quoting *Universal Licensing Corp. v. Lungo*, 293 F.3d 579, 581 (2d Cir. 2002)).

*See* 28 U.S.C. § 1332(c)(1).

On the other hand, if Zurich is a limited liability company, "a limited liability company takes the citizenship of each of its members." *Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt.*, 692 F.3d 42, 49 (2d Cir. 2012) (emphasis added). *See also Wise v. Wachovia Secs*, LLC, 450 F.3d 265, 267 (7th Cir. 2006) ("The citizenship for diversity purposes of a limited liability company . . . is the citizenship of each of its members.") (emphasis added), *cert. denied*, 549 U.S. 1047 (2006). In short, the "citizenship of a limited liability company is not the state in which it is organized or has its principal place of business, but rather, each of the states in which it has members." *Lewis v. Allied Bronze LLC*, No. 07 Civ. 1621(BMC), 2007 WL 1299251, at *1-2 (E.D.N.Y. May 2, 2007) (citation omitted). *See also Ferrara v. Munro*, No. 3: 16-CV-950(CSH), 2016 WL 6892073, at *3 (D. Conn. Nov. 22, 2016) (same). If Zurich is a limited liability company, it must inform the Court of the citizenship of each of its members.[8]

### III. CONCLUSION

Upon review of Plaintiff Mehedi's and Defendant Memry's affidavits regarding citizenship, the Court finds that there exists "diversity of citizenship" subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1332(a)(1). The totality of the damages Mehedi describes in his affidavit also indicate that the amount in controversy meets the jurisdictional amount to proceed: exceeding "$75,000, exclusive of interest and costs," 28 U.S.C. § 1332(a). Normally, under these

---

[8] If any member of the limited liability company is an individual, Zurich must provide the state of that individual's domicile, and thus citizenship. *See, e.g.*, *John Birch Soc.*, 377 F.2d at 199. In addition, if any member is a corporation or a limited liability company, Zurich must detail, respectively, the states of incorporation and principal place of business for a corporation, 28 U.S.C. § 1332(c), or the citizenship of the particular members of a limited liability company, *Bayerische Landesbank,* 692 F.3d at 49.

13

circumstances, the Court lifts the stay and resets the case deadlines.

However, Premier's insurance carrier and subrogee, Zurich, has filed a motion to intervene as a co-plaintiff as "of right," seeking the opportunity to recover the workers' compensation payments it has made and will be required to make to Mehedi for his injuries while working at Memry's facility. Citing Connecticut General Statutes § 31-293(a), Zurich claims that, as Premier's subrogee, it may recover the sums it must pay out as a result of a third-party tortfeasor's negligence. *See Pac. Ins. Co., Ltd.,* 323 Conn. at 266 (allowing workers' compensation carrier to bring common-law subrogation action against third-party tortfeasor who caused employee to sustain injuries).

Having analyzed Zurich's motion to intervene, the Court finds it has substantive merit under Rule 24, Fed. R. Civ. P., for intervention as "of right." However, the Court may not grant the motion at this time without knowing whether Zurich's entry as co-plaintiff will destroy diversity of citizenship subject matter jurisdiction in this action.

Therefore, Zurich is hereby ORDERED to submit an affidavit on or before **July 19, 2017**, to establish its citizenship for diversity purposes. In so doing, an officer or owner of Zurich must specify what kind of entity it is (*e.g*, corporation, limited liability company). If it is a corporation, Zurich must provide the "State[s] by which it has been incorporated" and the State in which it has "its principal place of business," 28 U.S.C. § 1332(c)(1). If Zurich is a limited liability company, it must name all of its members and establish the citizenship of each such member. If any member is an individual, Zurich must provide his or her domicile, *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000), which is her or his true, "fixed and permanent home and place of habitation"—i.e, "the place to which, whenever he is absent, he has the intention of returning," *Martinez v. Bynum*, 461 U.S.

321, 331 (1983).[9]

If the facts in Zurich's affidavit reveal that its citizenship is diverse from that of Memry, the Court will grant Zurich's "Motion to Intervene" and the action will proceed in this Court. In that instance, the Court will set revised case deadlines.

If, however, the citizenship of Zurich and Memry is not diverse, the Court will grant the motion to intervene as of right but then dismiss the action without prejudice. "[T]he presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *See Exxon Mobil Corp.*, 545 U.S. at 553. Upon destruction of diversity, the action must be dismissed. *See, e.g., S&S Kings Corp.,* 2017 WL 396741, at *4 ("Because S&N's intervention deprives the Court of subject-matter jurisdiction, this action must be dismissed.");[10] *Reinforced Concrete & Masonry Const., Inc. d/b/a Broad Const. v. Hudson Ins. Co.*, No. 14-CV-1705 (SAS), 2014 WL 6888764, at *3 (S.D.N.Y. Dec. 8, 2014) (holding that a general contractor could intervene as of right in subcontractor's action against its surety but dismissing action because general contractor's intervention destroyed diversity jurisdiction).[11]

---

[9] *See also* n.8, *supra*.

[10] As in *S&S Kings*, "[t]he parties may, of course, pursue this action in state court, where all parties may be joined in a single lawsuit." 2017 WL 396741, at *4 n.4. (citation omitted).

[11] As District Judge Scheindlin stated in *Reinforced Concrete*:

NJD has a right to intervene in this action. But NJD's intervention also deprives this Court of subject matter jurisdiction, precluding its further involvement in the case. Accordingly, for intervention to proceed – as both the criteria set forth in Rule 24(a) and basic principles of fairness demand – the dispute must be pursued in state court, where all the parties may be joined in a single lawsuit.

The foregoing is So ORDERED.

Dated: New Haven, Connecticut
      July 5, 2017

                                              */s/Charles S. Haight, Jr.*
                                              CHARLES S. HAIGHT, JR.
                                              Senior United States District Judge

---

2014 WL 6888764, at *3.